**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES**<br><br>**v.**<br><br>**CHRISTIAN DUNBAR** | **CRIMINAL NO.  20-424** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                    **April 8, 2025**

Defendant Christian Dunbar has filed a Motion and Updated Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. For the reasons set forth herein, Defendant's Motions will be denied.

### I.    BACKGROUND

On November 24, 2020, a federal grand jury in the Eastern District of Pennsylvania indicted Mr. Dunbar on 14 counts of bank embezzlement by an employee (Counts 1 to 3), procurement of citizenship through a false statement (Count 4), procurement of citizenship unlawfully (Count 5), false citizenship papers (Counts 6 and 7), and false statements under oath in a matter relating to naturalization or citizenship (Counts 8 to 14). On May 25, 2021, a federal grand jury charged Mr. Dunbar in a superseding indictment, adding two counts of filing a false federal income tax return (Counts 15 and 16) and three counts of failure to file tax returns (Counts 17 to 19).

On October 13, 2022, Mr. Dunbar, pursuant to a plea agreement, entered a plea of guilty to Counts 4 through 13 and Counts 17 through 19, and the government agreed to dismiss Counts 1 through 3 and Counts 14 through 16 at sentencing. The plea agreement also stipulated that Mr. Dunbar would pay restitution to the Internal Revenue Service ("IRS") in the amount of $33,232.00. At the time of the plea, the Court warned Mr. Dunbar that his plea may result in

deportation, that removal from the United States was not within the Court's jurisdiction, and that Mr. Dunbar would not be allowed to later withdraw his plea if deportation resulted.

On April 4, 2023, the Court sentenced Mr. Dunbar to six months' home detention, followed by three years of supervised release, restitution in the amount of $33,232, a fine of $10,000, and a special assessment of $1,300.[1]

On February 12, 2024, Mr. Dunbar timely filed a *pro se* Motion, wherein he requested emergency injunctive relief—specifically, his immediate release from Department of Homeland Security custody—and to vacate, set aside, or correct his guilty plea under § 2255, asserting that his counsel was ineffective for failing to accurately advise him of the potential immigration consequences stemming from his conviction and failing to investigate parts of the tax and immigration charges against him. On June 28, 2024, the Court dismissed Mr. Dunbar's request for emergency injunctive relief as moot,[2] as he was no longer in DHS custody, and ordered that Mr. Dunbar file his § 2255 Motion on the required, court-provided form.[3] On July 26, 2024, Mr. Dunbar filed his corrected § 2255 Motion on the correct form.[4] The Court then dismissed that motion without prejudice and directed Mr. Dunbar to refile an amended Motion with legible content;[5] Mr. Dunbar complied with this order and refiled his motion on August 7, 2024.[6]

On April 1, 2025, Mr. Dunbar filed an Updated Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, again requesting that the Court vacate his plea agreement as to Counts 10 (False Statement in Support of Naturalization), 18 (Failure to File Taxes 2016),

---

[1] Criminal J. at 4, 6 [Doc. No. 89].

[2] Order [Doc. No. 100].

[3] Order [Doc. No. 101].

[4] *See* Mot. [Doc. No. 102].

[5] Order [Doc. No. 103].

[6] *See* Mot. [Doc. No. 104].

and 19 (Failure to File Taxes 2019).[7] In it, he argues that '[t]he Government has conceded critical inaccuracies" that have "substantiated [Mr. Dunbar's] claims of ineffective assistance."[8]

## II.    LEGAL STANDARD

Section 2255 empowers a court to "vacate, set aside or correct" a sentence that "was imposed in violation of the Constitution or laws of the United States."[9] Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[10] This standard reflects "the great interest in finality of judgments," which "has special force with respect to convictions based on guilty pleas."[11] Courts "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."[12]

## III.    DISCUSSION

The United States Constitution guarantees a criminal defendant the effective assistance of counsel.[13] To establish an ineffective assistance of counsel claim, the petitioner must show "(1) that [his] counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced [the defendant]."[14]

---

[7] *See* Updated Mot. [Doc. No. 110].

[8] Updated Mot. at 2-3 [Doc. No. 110].

[9] 28 U.S.C. § 2255(a).

[10] *United States v. Gordon*, 979 F. Supp. 337, 339 (E.D. Pa. 1997) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

[11] *United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (internal citation omitted).

[12] *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (internal citation omitted).

[13] U.S. Const. amend. VI. *See also Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) ("Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel.") (internal citation omitted).

[14] *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 689-92 (1984)).

"The first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"[15] There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and courts must be "highly deferential" to counsel's strategic decisions.[16] On the second prong—prejudice—Defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[17] Defendant must prove both prongs to establish an ineffective assistance of counsel claim.[18] Because failure to satisfy either prong defeats an ineffective assistance claim, courts may address the prejudice prong first where it is dispositive of a petitioner's claims.[19]

Mr. Dunbar's ineffective assistance of counsel claim rests on five grounds that fall broadly into two categories: First, that his counsel failed to effectively advise him of the immigration consequences flowing from his guilty plea; and second, that his counsel failed to investigate various counts in the indictment. Mr. Dunbar fails to establish either prong on all grounds.

A.    Failure to Counsel Regarding Immigration Consequences

Mr. Dunbar's first two claims pertain to his counsel's advice regarding the immigration consequences of his plea: first, that "[c]ounsel affirmatively misled [him] about the immigration consequences of the proposed plea agreement clearly stating that the agreement would not

---

[15] *Padilla*, 559 U.S. at 366 (quoting *Strickland*, 466 U.S. at 688).

[16] *Strickland*, 466 U.S. at 687, 689-90.

[17] *Id.* at 694.

[18] *Id.*

[19] *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

subject [Mr. Dunbar] to deportation;"[20] and second, that "[c]ounsel detrimentally relied on the Department of Justice's . . . legal immigration opinion . . . that the plea agreement would prevent [Mr. Dunbar] from being charged as an aggravated felon for immigration purposes."[21] Mr. Dunbar argues that his prior counsel told him, for certain, that the plea agreement would not subject him to deportation, that this was his main motivation for signing the plea agreement, and that because he was given incorrect information by counsel, he signed his plea agreement unknowingly and unwillingly.

Even if Mr. Dunbar could show that his prior counsel erred in advising him about the potential immigration consequences of his guilty plea, he cannot show that that advice affected his decision to plead guilty. If a lawyer provides a client with erroneous sentencing predictions, but the plea agreement and colloquy correct that error, a defendant cannot succeed on an ineffective assistance of counsel claim.[22] Here, the Court fully explained to Mr. Dunbar at his plea colloquy that deportation could arise out of his guilty plea; this colloquy rendered his plea knowing and voluntary. The Court specifically explained to Mr. Dunbar that while the plea might minimize his risk of deportation and had been structured so he was not subject to *mandatory* deportation, it could not be determined whether the plea could result in deportation:

> Q:     Okay. So you are a United States Citizen right now; however, you stand to lose your citizenship, correct?
>
> A:     That is correct, Your Honor.
>
> Q:     And you understand that, as to—I don't know about deportation. I don't know about that at all. And I can tell you that this plea will have an effect on you

---

[20] Mot. at 6 [Doc. No. 104].

[21] Mot. at 7-8 [Doc. No. 104].

[22] *See United States v. Shedrick*, 493 F.3d 292, 300 (3d Cir. 2007); *see also United States v. Cormier*, 758 F. App'x 269, 275 (3d Cir. 2018) ("[A]ny prejudice resulting from an erroneous sentencing prediction is cured by a thorough Rule 11 plea colloquy.").

if the Government, ICE, tries to deport you because they will be looking at the conduct in the plea. Understand?

A:      I do, Your Honor.

Q:      And it is yet to be determined whether that conduct that you would be convicted of would qualify for deportation. You were previously—because I've read the documents that the Government submitted and the plea agreement. You were previously a permanent resident alien, right?

A:      That is correct, Your Honor.

Q:      Okay. And whether that gives you any privilege or cover against being deport for this conduct I just do not know because it is not in my province to decide deportation issues. Do you understand that?

A:      I do, Your Honor.

Q:      All right. So if that happens, you would not be able to withdraw this plea. Do you understand that?

A:      I do, Your Honor.[23]

A plea deal cannot guarantee a particular immigration outcome. Because the possible consequences of the guilty plea were fully explained on the record to Mr. Dunbar, the Court does not need to hold an evidentiary hearing.

Accordingly, Mr. Dunbar's claims of ineffective assistance of counsel based on the advice he received regarding immigration consequences of his guilty plea fail.

B.      Failure to Investigate

Mr. Dunbar's remaining claims pertain to his counsel's failure to conduct reasonable investigations into certain counts in the indictment: first, failure to investigate the count alleging his willful failure to file his 2019 taxes;[24] second, failure to investigate the count alleging he

---

[23] Change of Plea Hr'g Tr. at 14-15 (Oct. 13, 2022) [Doc. No. 90].

[24] Mot. at 9 [Doc. No. 104].

made a false statement in support of naturalization;[25] and third, failure to conduct an investigation to challenge the Government's restitution and loss calculations.[26] In his Updated Motion, Mr. Dunbar also references the claim that his counsel did not investigate the count regarding his 2016 taxes.[27] Mr. Dunbar alleges that because counsel failed to investigate whether Mr. Dunbar was truly guilty of these counts and whether the Government's loss calculations were accurate, he signed the plea agreement unknowingly and unintelligently.

While a defendant's counsel is obligated to investigate leads that may benefit their clients' defense, "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste."[28] A defense attorney's "decision not to investigate must be directly assessed for reasonableness."[29] Moreover, counsel cannot be held to be ineffective for failing to pursue a meritless issue.[30] Under *Strickland*, even if an attorney exercised poor judgment in opting not to conduct a thorough pretrial investigation regarding any particular charge, a defendant must show a reasonable likelihood that, but for the deficiency, the result of the proceeding would have been different.[31]

---

[25] Mot. at 10 [Doc. No. 104].

[26] Mot. at 15 [Doc. No. 104].

[27] Updated Mot. at 3 [Doc. No. 110]. While Mr. Dunbar's initial, correctly filed § 2255 motion does not explain the grounds for his claim regarding his 2016 taxes, it does request that the Court vacate the plea agreement as to Count 18, Failure to File 2016 Taxes. Mot. at 14 [Doc. No. 104]. Because the Court must construe *pro se* filings liberally, it will address the claim that counsel did not conduct a reasonable investigation regarding the 2016 tax evasion charge, Count 18.

[28] *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

[29] *Strickland*, 466 U.S. at 691.

[30] *Werts v. Vaughan*, 228 F.3d 178, 203 (3d Cir. 2000).

[31] *Strickland*, 466 U.S. at 694.

1.    *Counts 18 and 19: Failure to File 2016 and 2019 Taxes*

As to Mr. Dunbar's 2016 tax evasion charge, he has not provided the Court with any argument for what counsel should have investigated or why counsel's representation was deficient. All Mr. Dunbar argues is that his 2016 taxes were filed but rejected by the IRS.[32] This is insufficient for purposes of challenging the adequacy of his counsel's representation. Because Mr. Dunbar bears the burden of demonstrating that counsel was deficient and he was accordingly prejudiced,[33] and he has not explained how counsel was deficient, Mr. Dunbar's claim as to Count 18 must fail.

As to Mr. Dunbar's 2019 tax evasion charge, he has not made a showing that his counsel's decision not to investigate was unreasonable. Mr. Dunbar argues that he filed his 2019 taxes on May 26, 2021, when the IRS filing deadline for 2019 taxes was July 14, 2023.[34] While the filing deadline was indeed extended due to the COVID-19 pandemic, it was only extended to July 15, 2020.[35] Mr. Dunbar did not file by this deadline—indeed, he did not file until after he was indicted—and further investigation by his counsel would not have helped his case. Counsel cannot be held to be ineffective for failing to pursue a meritless issue. Thus, Mr. Dunbar's ineffective assistance of counsel claim as to Count 19 fails at *Strickland*'s first prong.

2.    *Count 10: False Statement in Support of Naturalization*

Mr. Dunbar has not demonstrated how he was prejudiced by counsel's failure to investigate the false statement in support of naturalization charge, and thus his claim on this ground must fail. Mr. Dunbar does not argue how any investigation into the options available to

---

[32] Updated Mot. at 3 [Doc. No. 110].

[33] *Strickland*, 466 U.S. at 689.

[34] Mot. at 9 [Doc. No. 104].

[35] Relief for Taxpayers Affected by Ongoing Coronavirus Disease 2019 Pandemic, I.R.S. Notice 2020-18, 2020-15 IRB 590 (Apr. 6, 2020).

mark as to marital status would resolve this issue in his favor. Defendant admitted at the plea hearing that his marriage was for immigration purposes only, that he was cohabitating with the mother of his children, and was living at a different address than the one he claimed he was cohabitating at with the spouse he claimed for immigration purposes.[36] Because the defense he raises now does not address all false statements on his application, Mr. Dunbar was not prejudiced by any potential deficiency arising from counsel's failure to investigate here.

### 3. *Restitution and Loss Calculations*

Finally, Mr. Dunbar has not demonstrated that counsel was deficient or that he was prejudiced by counsel's failure to properly investigate and advocate for a reduction in the restitution amount. Mr. Dunbar argues that the restitution amount is too high because of the dropped charges. However, the plea agreement is clear that the restitution amount of $33,232.00 was predicated on the government's agreement to drop Counts 15 and 16.[37] The benefit of the bargain for Mr. Dunbar was that Counts 15 and 16, which would have served as aggravated felonies in immigration proceedings, were dropped in exchange for Mr. Dunbar's agreement to have the amount of loss from those counts included in the overall tax loss to be collected by the IRS. There was no basis for counsel to investigate or object to these facts, which were not disputed, were admitted by Mr. Dunbar, and were part of the plea bargain that enabled Mr. Dunbar to minimize his deportation exposure. He cannot withdraw his plea now because he is unhappy with the immigration consequences that flowed from his plea.

On all three counts, Mr. Dunbar cannot demonstrate that his counsel was prejudicially ineffective under *Strickland*, and the Court rejects his claims of ineffective assistance to counsel

---

[36] Change of Plea Hr'g Tr. at 31-41 (Oct. 13, 2022) [Doc. No. 90] (reviewing facts underlying charges and Defendant admitting to committing the acts described).

[37] Plea Agreement, ¶ 8(a) [Doc. No. 75]; Change of Plea Hr'g Tr. at 11, 18, 19, 41 (Oct. 13, 2022) [Doc. No. 90].

9

for failure to investigate. Because all of this is clear from the record, no evidentiary hearing is needed.

**IV.     CONCLUSION**

For the reasons explained herein, Mr. Dunbar's § 2255 Motion will be denied. Because Defendant has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not be issued.[38] An order will be entered.

---

[38] *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).